1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          EASTERN DISTRICT OF CALIFORNIA

9

10   SALVADOR VENEGAS,                         Case No. 1:21-cv-00962-NODJ-EPG (PC)

           Plaintiff,                          FINDINGS AND RECOMMENDATIONS,
11                                             RECOMMENDING THAT DEFENDANTS'
           v.                                  MOTION FOR SUMMARY JUDGMENT BE
12                                             GRANTED, IN PART, AND DENIED, IN
     E. MENDOZA, et al.,                       PART, AND FURTHER RECOMMENDING
13                                             THAT PLAINTIFF'S MOTION FOR
           Defendants.                         SUMMARY JUDGMENT BE DENIED
14
                                               (ECF Nos. 79, 81, 84).
15

16                                             OBJECTIONS, IF ANY, DUE WITHIN
                                               THIRTY DAYS
17

18

19        Plaintiff Salvador Venegas is a state inmate proceeding *pro se* and *in forma pauperis* in

this civil rights action filed pursuant to 42 U.S.C. § 1983.

20        This case proceeds on the following claims: Eighth Amendment excessive force against

21   Defendants Mendoza, Grimsley, Cornejo, Navarro, Layshot, and Mattingly; First Amendment

22   retaliation against Defendants Mendoza, Grimsley, Cornejo, Navarro, and Robert Gonzalez;

23   Fourteenth Amendment procedural due process against Defendant A. Bracken; Eighth

24   Amendment deliberate indifference to serious medical needs against Defendant Cahapisan;

25   Eighth Amendment conditions of confinement against Defendant Munoz; and First

26   Amendment access to mail against Defendants Mendoza, Grimsley, Cornejo, and Navarro.

27        Certain Defendants and Plaintiff have filed a motion for summary judgment on the

28   following grounds:

Defendants Bracken, Gonzalez, Mendoza, Grimsley, Cornejo, Munoz, and Cahapisan move for summary judgment on the grounds that: (1) Defendants are not liable for retaliation in violation of the First Amendment; (2) Defendants are not liable for interfering with Plaintiff's mail in violation of the First Amendment; (3) the excessive force claims against Defendants Mendoza, Grimsley and Cornejo are barred by *Heck v. Humphrey*; (4) Defendant Cahapisan was not deliberately indifferent to a serious medical need; (5) Plaintiff was not denied the right to call witnesses at a disciplinary hearing by Defendant Bracken; (6) Defendant Munoz did not violate the Eighth Amendment; and (7) Defendants Bracken and Munoz are entitled to qualified immunity.

(ECF No. 79, pp. 1-2).[1]

Plaintiff has also filed a motion for summary judgment based largely on the facts alleged in his complaint. (ECF No. 84).

For the reasons given, it is recommended that Defendants' motion for summary judgment be granted to the extent that it requests dismissal of (1) Plaintiff's First Amendment access to mail claims against Defendants Mendoza, Grimsley, and Cornejo and (2) Plaintiff's First Amendment retaliation claims against Defendants Mendoza, Grimsley, and Cornejo, but only as to the allegation that they retaliated against Plaintiff by interfering with his mail and prison payments. (ECF No. 79). However, it is recommended that Defendants' motion for summary judgment be denied in all other respects.

Further, it is recommended that Plaintiff's motion for summary judgment be denied in its entirety. (ECF No. 81, 84).

## I.   BACKGROUND

### A.   Summary of Plaintiff's Complaint

This case proceeds on Plaintiff's complaint filed on June 21, 2021.[2] (ECF Nos. 1, 12). Pertinent here, Plaintiff's complaint asserts six claims. (ECF No. 12). He seeks monetary, declaratory, and injunctive relief. The following are Plaintiff's factual allegations, which are made under penalty of perjury.[3]

---

[1] For readability, minor alterations, such as altering spacing and capitalization, have been made to the parties' quotations without indicating each change.

[2] Pursuant to the Court's order (ECF No. 10), Plaintiff later submitted a signed copy of his complaint, with his factual statements made under penalty of perjury (ECF No. 12).

[3] *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 . . . [if it is] based on personal knowledge and set forth specific facts admissible in evidence.").

**Claim 1: Excessive Force**

On January 15, 2021, several investigative services unit (ISU) officers quickly ran to Plaintiff's cell, B6-245. Defendants Mendoza, Grimsley, and Cornejo directed Plaintiff to exit his cell for a cell search. Plaintiff complied with all orders. Plaintiff was then asked to submit to a pat-down search, to which Plaintiff complied. Without warning or provocation, Plaintiff was thrown from cell 245 to 242, approximately 10-15 feet. After Plaintiff was thrown on the ground, he was repeatedly assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, while restrained in handcuffs and shackles. When Plaintiff was being attacked while restrained, he was being choked. Defendants Mendoza and Grimsley shouted "stop resisting" and "you want to write complaints and grievances."

**Claim 2: Retaliation**

On January 15, 2021, Defendants Mendoza, Grimsley, and Cornejo told Plaintiff that his cell was going to be searched due to complaining and submitting grievances. Defendants Mendoza, Grimsley, and Cornejo brutally assaulted Plaintiff while he was restrained on the floor. Defendant Navarro repeatedly threatened Plaintiff, stating "you better keep your mouth shut" and "you want to complain, we'll show you how Wasco treats snitches."

On January 21, 2021, Thomas, a nonparty, informed Defendant Navarro that Plaintiff had submitted a staff complaint alleging excessive use of force and staff misconduct. Defendants Navarro and Robert Gonzalez came to Plaintiff's cell, D6-215, and stated, "Lieutenant Thomas told us about your complaint [Plaintiff] is snitching on you" and "this isn't over, you want to keep snitching it's going to get worse for you, stop fucking snitching, you piece of shit."

Finally, the complaint alleges that Plaintiff has been told his mail would not be given to him due to initiating grievances and lawsuits against Defendants Mendoza, Grimsley, Cornejo, and Navarro. On January 21, 2021, Defendant Navarro told Plaintiff, "you ain't getting mail anymore. You want to file grievances and cry about shit." Prior to being assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, Plaintiff would receive mail regularly through J.Pay.com. Now Plaintiff's mail has been withheld and his family is not allowed to place funds in his trust account. The funds are simply stolen. Defendants Mendoza, Cornejo,

Grimsley, and Navarro are members of the investigative services unit and have retaliated against Plaintiff, withholding his mail, due to filing grievances.

**Claim 3: Procedural Due Process**

Plaintiff was issued two rules violation reports and was denied the ability to call witnesses on his behalf by Defendant Bracken. Plaintiff was placed in administrative segregation and subjected to severe punishments. And he was found guilty of a rules violation report (RVR).

**Claim 4: Deliberate Indifference to Serious Medical Needs**

On January 15, 2021, Defendant Cahapisan was assigned to Facility B, Buildings 5-6, as a nurse. Defendant Cahapisan was required to screen Plaintiff for his injuries after he had been assaulted, which were physically obvious. Defendant Cahapisan denied Plaintiff medical attention and care for his injuries. Defendant Cahapisan stated "you know what you did. You get nothing." Defendant Cahapisan denied Plaintiff's request to be unrestrained while he was in the holding cell. Plaintiff complained that he has intense shoulder pain due to a preexisting injury to his shoulder. Defendant Cahapisan referred to Plaintiff having "some pain to help [him] think about what [he] did." Defendant Cahapisan refused to treat Plaintiff's wounds and injuries. Plaintiff's injuries were significant and caused intense pain to his face, back, neck, and knees.

**Claim 5: Unsanitary Conditions of Confinement**

On January 15, 2021, Plaintiff and his cellmate, Marcos Ramos, were placed in cell 123 in administrative segregation. Plaintiff repeatedly complained and filed grievances regarding unsanitary conditions because the toilets do not flush. When neighboring cells flush, their feces and urine come into Plaintiff's cell, spilling over and causing nausea. On February 5, 2021, Plaintiff again submitted a grievance. However, this time Plaintiff submitted a grievance alleging that all cells in ad seg cause the same unsanitary conditions. Plaintiff told C/O Willard, and C/O Willard told Plaintiff "my supervisor Munoz knows about the plumbing." Plaintiff's grievance was rejected on February 5, 2021. However, Plaintiff is still subjected to the same unsanitary conditions. Plaintiff is injured by the nauseous and disgusting effects of having other inmates' defecations passed into Plaintiff's cell through "ping-pong" toilets.

**Claim 6: Mail**

Plaintiff has been told that his mail would not be given to him due to initiating grievances and lawsuits against Defendants Mendoza, Grimsley, Cornejo, and Navarro. On January 21, 2021, Defendant Navarro told Plaintiff, "you ain't getting mail anymore. You want to file grievances and cry about shit." Prior to being assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, Plaintiff would receive mail regularly through J.Pay.com. Now Plaintiff's mail has been withheld and his family is not allowed to place funds in his trust account. The funds are simply stolen. Defendants Mendoza, Cornejo, Grimsley, and Navarro are members of the investigative services unit and have retaliated against Plaintiff, withholding his mail, due to filing grievances.

### B.    Defendants' Motion for Summary Judgment

Defendants Bracken, Gonzalez, Mendoza, Grimsley, Cornejo, Munoz, and Cahapisan move for summary judgment. (ECF No. 79). The other three Defendants—Mattingly, Layshot, and Navarro—have not moved for summary judgment. Defendants summarize their arguments for summary judgment as follows:

> (1) Defendants are not liable for retaliation in violation of the First Amendment; (2) Defendants are not liable for interfering with Plaintiff's mail in violation of the First Amendment; (3) the excessive force claims against Defendants Mendoza, Grimsley and Cornejo are barred by *Heck v. Humphrey*; (4) Defendant Cahapisan was not deliberately indifferent to a serious medical need; (5) Plaintiff was not denied the right to call witnesses at a disciplinary hearing by Defendant Bracken; (6) Defendant Munoz did not violate the Eighth Amendment; and (7) Defendants Bracken and Munoz are entitled to qualified immunity.

(ECF No. 79, pp. 1-2). Many of these arguments rest on Defendants' contention that Plaintiff does not have sufficient evidence to support his claims.

In support of their motion, Defendants have provided excerpts from Plaintiff's deposition, their own declarations, documents relating to the RVR proceedings, documents relating to Plaintiff's request to fix his toilet, and J-PAY summaries.

Plaintiff opposes Defendants' motion for summary judgment. (ECF Nos. 91, 93). His supporting attachments include his own declaration; the declaration of his former cellmate, Marcos Ramos; various documents related to his excessive force claim; and grievance

documents.[4]

Generally, Plaintiff asserts that he has sufficient evidence to support his claims. As to Defendants' argument that his excessive force claims are *Heck*-barred, Plaintiff argues that, because he is serving a sentence of life without the possibility of parole, the loss of good-time credits he suffered from his RVR could not affect the duration of his sentence so as to implicate *Heck*. And as to the argument that Defendants Bracken and Munoz are entitled to qualified immunity, Plaintiff argues that there is clearly established law on point and these Defendants violated his constitutional rights.

Defendants filed a reply, which they later supplemented, repeating their arguments for summary judgment and asserting that Plaintiff's factual contentions are not supported by proper evidence. (ECF Nos. 92, 98).

### C.    Plaintiff's Motion for Summary Judgment

In asserting that he is entitled to summary judgment, Plaintiff mostly repeats the allegations from his complaint rather than addressing whether there are genuine disputes of material fact and whether he is entitled to judgment as a matter of law. (ECF No. 84). For example, regarding his Eighth Amendment claim against Defendant Cahapisan, Plaintiff repeats his assertions from the complaint that Defendant Cahapisan declined to provide him medical attention because he assaulted Defendant Mendoza. However, he does not provide any developed argument as to why summary judgment is appropriate, especially in light of a declaration from Defendant Cahapisan that asserts that he examined Plaintiff but ultimately concluded that Plaintiff did not need medical attention.

In support of his motion, Plaintiff submits his own declaration, medical records, grievances, documents relating to issues with his toilet, J-PAY documents, documents relating to his complaints of excessive use of force against him, RVR documents, the declaration from Marcos Ramos, and discovery documents. (ECF No. 81).

Defendants oppose Plaintiff's motion for summary judgment. (ECF No. 87). In support, they generally offer the same arguments and evidence used in support of their motion for summary judgment, arguing that Plaintiff has not met his evidentiary burden for his claims.

---

[4] Some of the documents that the parties provide are reproduced in other filings and are not listed.

Plaintiff did not file a reply to Defendants' opposition, and the time to do so has expired. Local Rule 230(l).

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying

1  solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040,

2  1045 (9th Cir. 1989).

3      In reviewing the evidence at the summary judgment stage, the Court "must draw all

4  reasonable inferences in the light most favorable to the nonmoving party." *Comite de*

5  *Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It

6  need only draw inferences, however, where there is "evidence in the record . . . from which a

7  reasonable inference . . . may be drawn"; the Court need not entertain inferences that are

8  unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the

9  non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment

10  motion, the Court may consider other materials in the record not cited to by the parties but is

11  not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*,

     237 F.3d 1026, 1031 (9th Cir. 2001).

12     **III.    DISCUSSION[5]**

13         **A.    Excessive force**

14  _____

15  [5] As an initial matter, the Court declines to strike Plaintiff's declarations on the basis that Plaintiff used
    an electronic /s/ signature rather than a written signature, contrary to the Local Rules for *pro se* litigants.

16  (ECF No. 87-1, p. 8; *see also* ECF No. 92, p. 1, Local Rule 131(b), (c), (f)). The only case cited by
    Defendants on this issue involved declarations that contained "only typed signatures," meaning they

17  were not executed, "accompanied by an assertion that [the declarant] made the statements contained
    therein under oath, or accompanied by a statement that [the declarant] signed the declaration under

18  penalty of perjury." *Ellington v. Alameida*, No. 2:04-CV-00666-RSL-JLW, 2010 WL 2650632, at *8
    (E.D. Cal. July 1, 2010)*, report and recommendation adopted*, 2010 WL 11526778 (E.D. Cal. Aug. 26,

19  2010). Here, Plaintiff's declarations are signed, albeit electronically, dated and contain a statement that
    the statements are made "under penalty of perjury" under 28 U.S.C. § 1746. Moreover, most if not all

20  material factual allegations made in Plaintiff's declarations are repeated in a declaration that Plaintiff
    physically signed. (ECF No. 93, p. 18). Notably, Plaintiff used the same "/s/" signature that defense

21  counsel used for Defendants' motion for summary judgment. (ECF No. 79-1, p. 26).

22  Similarly, the Court declines to disregard Plaintiff's statements of undisputed facts solely because they
    do not specify the portion of the record that a party relies on to establish an undisputed fact. *See* Local

23  Rule 260(a)-(b). The bases on which Plaintiff's offers his undisputed facts are generally ascertainable
    from the attachments he has provided, such as his declarations, and Defendants have had the

24  opportunity to challenge the facts that they claim are unsupported. The Court thus sees no prejudice to
    Defendants based on Plaintiff's failure to strictly comply with Local Rule 260. *Porter v. Ollison*, 620

25  F.3d 952, 958 (9th Cir. 2010) ("Prisoner *pro se* pleadings are given the benefit of liberal construction.");
    Federal Rule of Civil Procedure 8(e) ("[p]leadings shall be construed so as to do justice"). Fed. R. Civ.

26  P. 1 (noting that the Federal Rules of Civil Procedure "should be construed, administered, and employed
    by the court and the parties to secure the just, speedy, and inexpensive determination of every action and

27  proceeding").

28

The Court begins with Plaintiff's excessive force claims, which stem from Plaintiff's allegations that Defendants Mendoza, Grimsley, and Cornejo assaulted him while he was restrained. Defendants' motion for summary judgment argues that Plaintiff's excessive force claims against them are *Heck*-barred because success on this claim would necessarily imply the invalidity of his RVR for battery on a peace officer for which he "received a credit loss of 130 days." (ECF No. 79-1, p. 17). However, they also briefly contend that "there is no evidence that Defendants Mendoza, Grimsley, or Cornejo applied any force other than what was necessary to respond to Plaintiff's alleged attack on Mendoza. (*Id.* at 19).

Plaintiff argues that his claims are not *Heck*-barred because he is serving a life sentence without the possibility of parole and thus the credit loss will not affect the duration of his confinement. (ECF No. 91, p. 24). Plaintiff also maintains that Defendants used excessive force against him.

### 1. *Heck* Bar

The Ninth Circuit has explained the *Heck*-bar as follows:

The *Heck*-bar, or required favorable termination rule, is a rule of preclusion named after *Heck v. Humphrey*—the Supreme Court case that outlined the doctrine. *Heck* involved a state criminal defendant who filed a § 1983 damages claim for a purportedly unlawful arrest and investigation that resulted in his manslaughter conviction. 512 U.S. at 478-79, 114 S.Ct. 2364. The Court held that the defendant's § 1983 action was properly dismissed because his state court conviction, which had not yet been overturned, precluded his civil claim for damages. *Id.* at 483, 114 S.Ct. 2364. It adopted this rule because the defendant's § 1983 claim was analogous to the malicious prosecution tort. *Id.* at 484, 114 S.Ct. 2364. At common law, to maintain a malicious prosecution claim (i.e., a claim for "damages for confinement [improperly] imposed pursuant to legal process"), a party had "to prove the unlawfulness of his conviction or confinement." *Id.* at 484, 486, 114 S.Ct. 2364. The requirement that a criminal defendant first obtain a favorable termination of his conviction before filing a malicious prosecution claim ensured that he could not collaterally "challeng[e] the validity of [an] outstanding criminal judgment[ ]" via a "civil tort action[ ]." *Id.* at 486, 114 S.Ct. 2364. As a result, the *Heck* Court held that to prevent a dismissal of his cause of action, a plaintiff, whose § 1983 claim arose from "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," needed to prove that he had first overturned his conviction or sentence in another proceeding. *Id.* at 486–87, 114 S.Ct. 2364.

*Hebrard v. Nofziger*, 90 F.4th 1000, 1007-08 (9th Cir. 2024). Although this case concerns a prison RVR rather than a state criminal case, "[t]he Supreme Court extended the application of

*Heck* to the prison context in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)." *Id.* at 1008.

Here, the parties agree that Plaintiff was charged with a RVR for battery on a peace officer (Defendant Mendoza) in connection with the excessive force incident, that he was ultimately found guilty of the RVR and received a credit loss of 130 days, and that he is serving a sentence of life in prison without the possibility of parole. (ECF No. 79-2, pp. 6-7; ECF No. 92, p. 7; ECF No. 93, pp. 6-7). The only dispute is whether Plaintiff's sentence renders *Heck* inapplicable, with Plaintiff arguing that *Heck* does not apply because his credit loss cannot affect the duration of his life sentence.

Defendants' position is directly contrary to binding Ninth Circuit precedent, which holds that "*Heck* cannot apply to [a prisoner's] claim unless the prison's revocation of his earned-time credits 'ha[d] an effect on the duration of time to be served.'" *Hebrard*, 90 F.4th at 1009 (quoting *Nettles v. Grounds*, 830 F.3d 922, 928–29, 929 n.4 (9th Cir. 2016) (en banc). As explained in another Ninth Circuit decision: "Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the 'heart' of habeas jurisdiction," meaning that "the favorable termination rule of *Heck* and *Edwards* does not apply." *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003); *see Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (declining to apply *Heck*-bar "[b]ecause neither prisoner's claim would necessarily spell speedier release"). Consistent with such authority, district courts have declined to apply *Heck* in similar circumstances. *See Reed v. CSP-LAC*, No. CV 12-10727 VAP (AS), 2018 WL 5974322, at *3 (C.D. Cal. May 9, 2018), *report and recommendation adopted*, 2018 WL 5914211 (C.D. Cal. June 6, 2018) (declining to apply *Heck*-bar where the plaintiff appeared to be serving a life sentence without the possibility of parole); *Jones v. Woodward*, No. 1:14-CV-02084-LJO-SAB (PC), 2016 WL 7374585, at *8 (E.D. Cal. Dec. 19, 2016) ("The fact that Plaintiff was subsequently convicted of possession of drugs where a prisoner is kept and sentenced to a subsequent term of four years (to be served consecutive to life sentence) will not have any impact on the length or duration of Plaintiff's present life sentence without the possibility of parole, and the Court therefore finds the *Heck* bar

inapplicable to Plaintiff's due process claims in the present action."); *Franklin v. Jimenez*, No. 11CV1240 JAH (BGS), 2015 WL 13687953, at *5 (S.D. Cal. Dec. 10, 2015), *report and recommendation adopted*, 2016 WL 10933301 (S.D. Cal. Feb. 8, 2016) (declining to apply *Heck*-bar for retaliation claim where the plaintiff had "been sentenced to life without the possibility of parole").

Accordingly, because Plaintiff is serving a life sentence without the possibly of parole, his loss of 130 days of credit will not affect the duration of his sentence and thus *Heck* does not apply here.

### 2. Amount of Force

Defendants also briefly argue that "there is no evidence that Defendants Mendoza, Grimsley, or Cornejo applied any force other than what was necessary to respond to Plaintiff's assault on Mendoza." (ECF No. 79-1, p. 19).

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id. at* 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9.

In support of their motion, Defendants have offered their own declarations, which generally assert that, while they did apply some force (or restraint) to prevent Plaintiff from

harming Mendoza, they did not punch, kick, or choke him, or otherwise use excessive force. (ECF No. 79-2, pp. 94, 98, 124-125).

However, Plaintiff's verified complaint alleges that Defendants threw him to the ground without provocation and assaulted him while he was in handcuffs and shackles, while stating, "You want to write complaints and grievances." (ECF No. 12, p. 6). And Plaintiff's declarations likewise state that Defendants assaulted him while he was restrained. (ECF No. 82, p. 7; ECF No. 84, p. 4; ECF No. 93, p. 15). Additionally, Plaintiff has provided the declaration of his former cellmate, Marcos Ramos, which states that, as Plaintiff was stepping out of his cell, he stumbled, leading ISU officers to attack Plaintiff. (ECF No. 81, p. 164; ECF No. 93, p. 22). Further, Ramos asserts that, after Plaintiff was handcuffed and placed in leg restraints, he saw four to six officers repeatedly punch and kick Plaintiff while yelling at him about grievances. (*Id.*).

Given this evidence, a material issue of fact remains as to whether Defendants used excessive force against Plaintiff. The Court thus recommends that summary judgment be denied on Plaintiff's claim for excessive force in violation of the Eighth Amendment.

### 3.   Plaintiff's motion for summary judgment

Plaintiff's motion for summary judgment generally repeats his assertions from the complaint that Defendants assaulted him while he was restrained. (ECF No. 84, p. 25). Defendants' opposition repeats their arguments that Plaintiff's excessive force claims are barred by *Heck* and that they used reasonable force to subdue Plaintiff's alleged attack on Mendoza. (ECF No. 87-1, pp. 19, 22). For the reasons given above in connection with Defendants' motion for summary judgment, the Court concludes that a material issue of fact remains as to whether Defendants used excessive force and thus Plaintiff's motion for summary judgment should be denied as to the excessive force claim as well.[6]

### B.   Deliberate Indifference to Serious Medical Needs

Defendant Cahapisan next moved for summary judgment on Plaintiff's claim for

---

[6] Plaintiff's motion for summary judgment also mentions Defendant Navarro. (ECF No. 84, p. 25). However, Navarro has only recently appeared in this case and summary judgment as to that Defendant is premature. The Court will issue a separate order requiring the parties to file joint statements as to how the case should proceed against Navarro.

deliberate indifference to Plaintiff's serious medical needs, relying on Defendant Cahapisan's declaration that he examined Plaintiff but concluded that he did not require further treatment after observing that Plaintiff was able to lift his arms. (ECF No. 79-1, pp. 20-21; ECF No. 79-2, pp. 76-78). However, after Plaintiff submitted a declaration stating that Cahapisan did not examine or treat his medical needs (ECF No. 93, p. 16), Defendants filed a supplemental reply "acknowledg[ing] that these statements raise a genuine issue of material fact whether Cahapisan actually evaluated Plaintiff's condition." (ECF No. 98, p. 8).

Plaintiff also moves for summary judgment on this claim, repeating his assertions from the complaint that Cahapisan refused to provide him medical care because he allegedly assaulted Mendoza. (ECF No. 84, p. 24).

Given the disputed facts as to whether Cahapisan in fact examined and treated Plaintiff's injuries, a material issue of fact remains as to whether Cahapisan was deliberately indifferent to Plaintiff's serious medical needs, and the Court recommends denying both motions for summary judgment as to this claim.

### C.   Conditions of Confinement

Defendants next move for summary judgment on Plaintiff's claim for unconstitutional conditions of confinement based on Plaintiff's allegation that his cell's toilet did not flush and human waste came into it from neighboring cells. This claim proceeds against Defendant Munoz based on the complaint's allegation that he was ultimately responsible for ensuring the toilet was fixed but failed to do so.

Defendant Munoz argues that he did not act with deliberate indifference to Plaintiff's malfunctioning toilet "because Plaintiff was moved to a different cell and a plumber was called to address the issue." (ECF No. 79-1, p. 22). Alternatively, Munoz argues that he "is entitled to qualified immunity because it is not clearly established that a prison official who calls for maintenance personnel to address a plumbing issue and learns that these personnel are unable to address that issue violates the Constitution." (*Id.* at 24).

Plaintiff acknowledges that a plumber was sent to his cell but asserts that the plumber already knew that the toilet could not be fixed because the plumber did not have the correct equipment to fix it. (ECF No. 93, p. 17; *see* ECF No. 91, p. 17). Moreover, he contends that he

was housed in other cells but they had the same problem of overflowing toilets. Lastly, he argues that Munoz is not entitled to qualified immunity.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer*, 511 U.S. at 832. Conditions of confinement may, consistent with the Constitution, be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

Two requirements must be met to show an Eighth Amendment violation. *Farmer,* 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer,* 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

According to Defendant Munoz's motion for summary judgment and his supporting declaration, he worked as the Facility D Program Sergeant, and when he was provided information of maintenance issues in cells in that part of the prison, including plumbing problems, he would issue a work order to resolve the problem. (ECF No. 79-2, p. 83). He states that he first learned of Plaintiff's plumbing issues on March 1, 2021, when a correctional officer prepared a work request for Plaintiff's cell. Munoz promptly approved the work request. He asserts that he was not aware of other complaints by Venegas concerning the toilets in his

cells.

Plaintiff contends that Munoz was the person solely responsible for the issues with his toilet and did nothing to fix his problem. (ECF No. 91, p. 29). Plaintiff states that he was placed in the unsanitary cell on January 15, 2021, and repeatedly complained, again submitting a grievance on February 5, 2021, and alleged that he was still experiencing the same problems when he filed the complaint in June 2021. (ECF No. 12, p. 11). While he acknowledges that a plumber came to fix his toilet, his declaration states that the plumber already knew there was no fix because he did not have the proper equipment. (ECF No. 93, p. 17). Further, while Plaintiff acknowledges that he was moved to different cells, he complains that each cell had the same problem. (*Id.*). He asserts that Munoz did not provide any cleaning supplies or remedy to fix the problem. (ECF No. 82, p. 10; ECF No. 84, p. 7). He also contends that he had a conversation with a correctional officer who informed him that Munoz knew about the plumbing.

Viewing this evidence in a light most favorable to Plaintiff, a material issue of fact remains as to whether Munoz was deliberately indifferent to the unsanitary conditions with his toilet. Based on the evidence presented, a jury could reasonably conclude that Munoz, as the person responsible for plumbing issues, sent a plumber to Plaintiff's cell as a dead-end, knowing that the plumber lacked the proper equipment to ever fix the toilet. Moreover, construing disputed facts in Plaintiff's favor, his transfer to a different cell was not a solution either because Plaintiff claimed that he suffered the same malfunctioning toilet issues for a period of at least five months. *Fields v. Ruiz*, No. 1:03CV6364 OWW DLB P, 2007 WL 1821469, at *7 (E.D. Cal. June 25, 2007), *report and recommendation adopted*, No. 103CV-06364-OWW-DLBP, 2007 WL 2688453 (E.D. Cal. Sept. 10, 2007) ("[S]ubjecting an inmate to confinement in a cell with a malfunctioning toilet for 29 days, as described by plaintiff, is sufficient to meet the objective requirement of the Eighth Amendment analysis.").

Accordingly, the Court recommends denying summary judgment as to Plaintiff's conditions of confinement claim.

### 1. Qualified immunity

Defendant Munoz alternatively claims that he is entitled to qualified immunity

1    "because it is not clearly established that a prison official who calls for maintenance personnel

2    to address a plumbing issue and learns that these personnel are unable to address that issue

3    violates the Constitution." (ECF No. 79-1, pp. 24-25).

4           "The doctrine of qualified immunity protects government officials 'from liability for

5    civil damages insofar as their conduct does not violate clearly established statutory or

6    constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*,

7    555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In

8    determining whether a defendant is entitled to qualified immunity, the Court must decide (1)

9    whether the facts shown by plaintiff make out a violation of a constitutional right; and (2)

10   whether that right was clearly established at the time of the officer's alleged misconduct.

11   *Pearson*, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that

12   every 'reasonable official would [have understood] that what he is doing violates that right.'"

13   *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Al–Kidd*, 563 U.S. at 741)

14   (alteration in original). This immunity protects "all but the plainly incompetent or those who

     knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

15
16           Binding caselaw "need not catalogue every way in which" prison conditions can
             be constitutionally inadequate "for us to conclude that a reasonable official would
17           understand that his actions violated" an inmate's rights. *Castro v. County of Los
             Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). Rather, "a right is clearly
18           established when the 'contours of the right [are] sufficiently clear that a
             reasonable official would understand that what he is doing violates that right.'" *Id.*
19           (alteration in original) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.
             2003)).

20   *Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023)

21           Here, Munoz's argument relies on his own version of the facts, *i.e.*, that Munoz tried to

22   address Plaintiff's toilet problem and learned later that he could not do so. However, in light of

23   the above disputed facts, the Court believes the relevant question is whether there is clearly

24   established caselaw holding that a prison official's failure to provide sanitary conditions,

25   including toilets that do not flush and cells filled with human waste, violates the Constitution.

26           Notably, the Ninth Circuit has concluded, "Unquestionably, subjection of a prisoner to

27   lack of sanitation that is severe or prolonged can constitute an infliction of pain within the

28   meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.),

*opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995) (collecting cases). And the Ninth Circuit has noted that a long-term deprivation of a toilet states a violation of the Eighth Amendment. *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("Moreover, although we have no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment, the plaintiffs in this case testify that the state imposed conditions inescapably resulting in prisoners wetting each other with urine. This evidence, if believed, would allow a fact-finder to conclude that the plaintiffs suffered a sufficiently serious deprivation to violate the Eighth Amendment.").

Perhaps most on point, the Supreme Court has concluded that prison officials were not entitled to qualified immunity where a prisoner alleged that he was confined in a cell covered with human waste and another cell "which was equipped with only a clogged drain in the floor to dispose of bodily wastes," because "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [the prisoner] in such deplorably unsanitary conditions for such an extended period of time." *Taylor v. Riojas*, 592 U.S. 7, 8-9, (2020) (per curiam). Likewise, the Ninth Circuit has concluded that subjection to flooded toilets, and other unsanitary conditions, violates the Eighth Amendment. *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) ("The health hazard caused by vermin at the penitentiary is exacerbated by the plumbing and ventilation inadequacies. Such vermin infestation, properly considered in the light of unsanitary conditions such as standing water, flooded toilets and sinks, and dank air, is an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.").

In light of this authority, no reasonable prison official could conclude that Plaintiff's subjection to human waste from flooded toilets for a period of at least five months was constitutionally permissible. Accordingly, Munoz is not entitled to qualified immunity.

### 2.  Plaintiff's motion for summary judgment

Plaintiff's motion for summary judgment generally repeats his assertions from the complaint that Defendant Munoz knew about, but failed to correct, the issues with his toilet. (ECF No. 84, p. 21). Munoz's opposition repeats his argument that he was not deliberately indifferent to Plaintiff's malfunctioning toilet and that he is entitled to qualified immunity

because there is no clearly established law on point. (ECF No. 87-1, pp. 21, 25).

For the reasons given above in connection with Munoz's motion for summary judgment, the Court concludes that a material issue of fact remains as to whether Munoz was deliberately indifferent to Plaintiff's malfunctioning toilet, and Plaintiff's motion for summary judgment should also be denied as to the conditions of confinement claim.

### D.    Due process

Defendants also move for summary judgment on Plaintiff's due process claim against Defendant Bracken based on Plaintiff's allegation that he was denied the right to call witnesses at his RVR proceeding.

Defendant Bracken argues that he did not deny Plaintiff the right to call witnesses because Plaintiff requested only one witness to appear at his disciplinary hearing, Mendoza, whom Plaintiff questioned. (ECF No. 79-1, p. 21). While Bracken acknowledges Plaintiff's assertion that Plaintiff asked an investigative employee, M. Muro, to interview other inmates for the proceedings, he argues that Muro could not locate them because they were no longer housed in that part of the building and Plaintiff did not provide their CDCR numbers. Alternatively, citing these circumstances, Bracken argues that he is entitled to qualified immunity as his conduct amounts, at most, to a reasonable mistake, and "it is not clearly established that proceeding with a prison disciplinary hearing after being informed that potential witnesses could not be found constitutes a due process violation." (*Id.* at 24).

Plaintiff responds that he was in administrative segregation and could not gather facts to defend himself without the investigative employee, whose job it is to interview witnesses. (ECF No. 91, pp. 28-29). However, Muro told him that Bracken had denied his right to call witnesses. Lastly, he contends that Bracken is not entitled to qualified immunity.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir.1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v.*

*Conner*, 515 U.S. 472, 483-84 (1995). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. However, *Wolff* established some constitutionally mandated procedural requirements for disciplinary proceedings. Pertinent here, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

According to Defendant Bracken's motion for summary judgment and his supporting declaration, he worked as the Senior Hearing Officer assigned to adjudicate Plaintiff's RVR for battery on a peace officer stemming from the January 15, 2021 incident. (ECF No. 79-2, p. 50). Muro was assigned as an investigative employee, and Plaintiff requested that Muro contact multiple inmate witnesses, but Muro could not locate them because Plaintiff provided their last names, rather than their CDCR number, and they were no longer housed in the part of the building (Building 6, B-side) where the incident occurred. Plaintiff appeared at the hearing, did not request a postponement, but stated that he was ready to proceed. Upon review of the evidence, Bracken found Plaintiff guilty of battery on a peace officer.

Plaintiff's declaration, in contrast, contends that he wanted Muro to interview "witnesses housed in D5, formerly housed in B6." (ECF No. 93, p. 15). Plaintiff attaches a list of inmate witnesses that he purports to have provided to Muro. (ECF No. 93, p. 84). Of the eleven inmates, he lists both first and last names for all but three, for whom he just lists their last names. Additionally, he lists the cell numbers for each of the witnesses, and for two of them, including his former cellmate Marcos Ramos, he lists the part of the building and apparent cell number they were located in, *e.g.*, D6-215 for Ramos. Plaintiff asserts that Muro stated that Bracken had denied any and all inmate witnesses. (ECF No. 82, p. 13). Further, Plaintiff says at his hearing that Bracken refused to call any of his witnesses, "stating he would not call any witnesses from the general population, because [he] was an administrative segregation inmate, and the staff reports provided a "full picture" of the incident, and he would rather believe the correctional officers than hearing anything [he] had to say."[7] (*Id.*). Plaintiff

---

[7] Plaintiff's declaration states that Muro told him "that it was the hearing officer's decision who I could

contends that he did not ask to postpone his hearing because all of his witnesses were ultimately going to be denied by Bracken anyway. As noted above, there is a declaration from Ramos in the record, whom Plaintiff listed as one of his witnesses for his RVR proceedings, where Ramos claimed to have seen various prison guards attacking Plaintiff after Plaintiff stumbled.[8] (ECF No. 81, p. 164; ECF No. 93, p. 22).

Viewing this evidence in a light most favorable to Plaintiff, a material issue of fact remains as to whether Bracken denied Plaintiff the ability to call witnesses to defend himself at the RVR hearing. Importantly, if Plaintiff's statements are believed, a jury could reasonably conclude that no inmate witnesses were called because Bracken chose not to hear from them, as opposed to the inability to locate them, especially in light of the evidence that Plaintiff provided full names and updated locations for at least some of the witnesses, one of which (Ramos) has provided a declaration stating that he witnessed Plaintiff being attacked in apparent retaliation for filing grievances.

Accordingly, the Court recommends denial of summary judgment on Plaintiff's due process claim.

### 1. Qualified immunity

As noted above, qualified immunity has two prongs, considering (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232. As to the first prong, Defendant Bracken claims that he was not aware that Plaintiff had requested other witnesses and justifiably relied on Muro's alleged inability to locate witnesses. Thus, he argues that he "reasonably proceeded with the RVR hearing." (ECF No. 79-1, p. 24). However,

---

call as a witness and what questions I could ask." (ECF No. 93, p. 15). Defendant Bracken argues that this contradicts his prior statement that said that Muro told him that Bracken denied all inmate witnesses. (ECF No. 98, p. 6). The Court disagrees that this is necessarily inconsistent. In context, it appears that Plaintiff is claiming that Muro informed him that it was ultimately up to Bracken whether he would call witnesses (ECF No. 93, p. 15), and elsewhere, Plaintiff elaborates that Bracken had decided that he could not call inmate witnesses (ECF No. 82, p. 13).

[8] Defendant asserts that this evidence is ultimately immaterial because Ramos does not say whether Plaintiff hit Mendoza, which was the basis for the RVR. (ECF No. 98, p. 7). The Court disagrees. While Ramos does not specify whether he saw Plaintiff hit Mendoza, the context of his declaration makes it appear that Defendants' attack on Plaintiff was unprovoked, including Ramos's statement that they yelled at him about grievances. If true, this would certainly be relevant information for a hearing officer to know in determining whether Plaintiff assaulted Mendoza.

the Court must view the evidence in a light most favorable to Plaintiff, not Defendant Bracken, and for the reasons discussed above, it concludes that Plaintiff could make out a violation of a constitutional right.

As to the second prong, Bracken argues that is not clearly established that his conduct violates the Constitution. But once again, he frames the question in light of his version of facts, which the Court has found disputed as addressed above. Given that dispute of fact, the relevant question is whether there is clearly established caselaw holding that a prison official's unreasoned denial of witnesses for a disciplinary proceeding violates a prisoner's due process rights. The answer is yes. As the Ninth Circuit has noted, "it is certainly clearly established that 'the inmate facing disciplinary proceedings should be allowed to call witnesses . . . in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Serrano*, 345 F.3d at 1080 (quoting *Wolff*, 418 U.S. at 566). Here, Bracken provides no reason why the calling of Plaintiff's witnesses would be unduly hazardous to institutional safety or correctional goals; rather, he contends that he did not in fact deny Plaintiff the ability to call witnesses.

Accordingly, Bracken is not entitled to qualified immunity on Plaintiff's due process claim.

### 2. Plaintiff's motion for summary judgment

Plaintiff's motion for summary judgment generally repeats his assertions from the complaint that Defendant Bracken denied his ability to call witnesses. (ECF No. 84, p. 16). Bracken's opposition repeats his argument that he did not deny Plaintiff witnesses and is entitled to qualified immunity. (ECF No. 87-1, pp. 20, 24-25). For the reasons given above in connection with Bracken's motion for summary judgment, the Court concludes that a material issue of fact remains as to whether Bracken denied Plaintiff the ability to call witnesses and recommends denying Plaintiff's motion for summary judgment on this claim as well.

### E.   First Amendment – Mail

Plaintiff alleges that Defendants Mendoza, Grimsley, and Cornejo have withheld his mail. Notably, Defendant Navarro told Plaintiff that he would not be receiving any mail on January 21, 2021. And Plaintiff's mail has been withheld and his family cannot place funds in

his trust account.

The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). With respect to incoming prisoner mail, prison officials have a responsibility to forward mail to inmates promptly. *See Bryan v. Werner*, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time and allegations of a pattern of interference with mail are sufficient to state a claim for violation of the First Amendment. *Roberts v. Lynch*, 2021 WL 147131, at *3 (E.D. Cal. Jan. 15, 2021) (citations omitted); *see also Calihan v. Adams*, 2011 WL 284467, at *3 (E.D. Cal. Jan. 26, 2011) (ongoing delays of between twenty-one and thirty-five days in receiving incoming mail sufficiently long to substantially burden plaintiff's First Amendment rights and chill his exercise of free speech). Any practice or regulation that unduly delays an inmate's incoming mail must be reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89. But a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

Defendants argue that they did not interfere with Plaintiff's mail at all and they lack access to J-Pay payments to inmates. (ECF No. 79-1, p. 16). Additionally, they provide a log showing that Plaintiff received numerous pieces of mail after January 15, 2021. (ECF No. 79-2 at 134-137). However, Mendoza does acknowledge censoring a single J-Pay email sent to Plaintiff on March 11, 2021, that contained sexually explicit content.[9] With this exception noted, each Defendant has filed a declaration stating that they were not involved with Plaintiff's mail and did not otherwise interfere with his mail or his money deposits and that they do not even have access to J-Pay payments sent to inmates. (ECF No. 79-2, pp. 94, 99, 125).

---

[9] Plaintiff's First Amendment claim proceeds on his allegation that he was completely denied mail and J-Pay payments, purportedly in retaliation for filing grievances. Plaintiff did not raise any allegation in his complaint about the improper censoring of an allegedly sexually explicit email and the Court declines to address any such an allegation.

Plaintiff generally repeats his assertions from his complaint but provides no evidence that any Defendant had any involvement with his mail or J-Pay payments. (ECF No. 91, p. 23). Further, the Court notes that, in his deposition, Plaintiff concedes that he does not have any information that Defendants interfered with his mail or payments, but he believed it was the ISU unit because Navarro had made statements that he was going to get his mail, and he presumed that other ISU officers worked in concert with Navarro. (ECF No. 79-2, pp. 42). However, Plaintiff admitted that Navarro never told him that any of the other Defendants were interfering with his mail. (*Id.* at 42-43).

Upon review of the evidence, the Court recommends granting summary judgment on this claim. In short, Defendants have come forth with evidence that they never interfered with Plaintiff's mail or payments. In response, Plaintiff does not offer any conflicting evidence; rather, his claim is premised on his assumption that these Defendants must have interfered with his mail in concert with Navarro even though Navarro never implicated any of them.

For this reason, the Court will recommend that Defendants' motion for summary judgment be granted as to this claim and Plaintiff's motion for summary judgment be denied as to this claim.

### F.    First Amendment - Retaliation

Plaintiff's retaliation claim proceeds against Defendant Gonzalez based on his allegation that Gonzalez (along with Defendant Navarro who has not moved for summary judgment) threatened him regarding his filing grievances. Plaintiff's retaliation claims also proceed against Defendants Mendoza, Grimsley, and Cornejo for alleging searching his cell and assaulting him on January 15, 2021, based on grievances that Plaintiff filed. Additionally, Plaintiff alleges that Defendants Mendoza, Grimsley, and Cornejo have retaliated against him by withholding his mail.

A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108,

1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes*, 408 F.3d at 567.

### 1. Defendants' motion for summary judgment

#### a. Defendant Gonzalez

Defendant Gonzalez moved for summary judgment on this claim, relying on his declaration that he did not know about Plaintiff's grievances so as to retaliate against Plaintiff on this basis and denying that he ever threatened Plaintiff for filing grievances. (ECF No. 79-1, p. 14; ECF No. 79-2, pp. 102-103). However, after Plaintiff submitted a declaration stating that Gonzalez came to his cell and threatened him not to complain about the alleged assault on him (ECF No. 93, p. 17), Defendants filed a supplemental reply "acknowledg[ing] that this assertion creates a genuine issue of fact concerning this claim." (ECF No. 98, p. 5).

Plaintiff also moves for summary judgment, generally repeating his assertions from the complaint. (ECF No. 84, p. 26).

Given the disputed evidence as to whether Gonzalez in fact ever threatened Plaintiff, a material issue of fact remains as to whether Gonzalez retaliated against Plaintiff and thus the Court recommends denying both parties' motion for summary judgment on this claim.

#### b. Defendants Mendoza, Grimsley, and Cornejo

According to the motion for summary judgment filed by Defendants Mendoza, Grimsley, and Cornejo, and their supporting declarations, they did not know about Plaintiff's prior grievances so as to retaliate against him on this basis. (ECF No. 79-1, pp. 14-15; ECF No. 79-2, pp. 93-95, 97-99, 123-125). Rather, they went to search his cell to collect evidence regarding gang activity in that part of the prison. They also argue that, because Plaintiff testified at his deposition that he did not know which particular Defendant made a reference to

him filing grievances during his assault, as Plaintiff was face down during the incident, that he cannot prove which Defendants retaliated against him. (*See* ECF No. 79-2, p. 17, 37). Alternatively, Defendants argue that, assuming they knew about Plaintiff's prior grievances, they had a legitimate correctional purpose to search Plaintiff's cell for gang activity.[10] As to Plaintiff's claim that they interfered with his mail and prison payments, Defendants provide the same arguments relating to Plaintiff's First Amendment mail claim—in short, that they had no involvement with his mail or payments.

Plaintiff's opposition maintains that he was assaulted while restrained on the floor. (ECF No. 91, p. 9). While Plaintiff initially attributed the statements during the assault to certain Defendants (ECF No. 84, p. 4), he elsewhere admits that this attribution was based on presumption and that he does not for certain know who made the statements about his filing grievances; however, he contends that Defendants acted in concert to beat him and the statements about his filing grievances were made during the assault. (ECF No. 79-2, pp. 17, 25; ECF No. 84, p. 4; ECF No. 91, p. 9; ECF No. 93, p. 15). Plaintiff also maintains that Defendants interfered with his mail.

Viewing this evidence in a light most favorable to Plaintiff, a material issue of fact remains as to whether Defendants retaliated against Plaintiff by searching his cell and allegedly assaulting him. This is so largely for the same reasons given above in connection with permitting Plaintiff's excessive force claim to proceed. Notably, Plaintiff has provided his own declaration stating that at least one officer made statements about him filing grievances during the assault. And he has provided the declaration of his former cellmate who claims to have witnessed the assault and heard statements made about filing grievances. The Court finds it ultimately immaterial that Plaintiff cannot pinpoint which Defendant made the statement. Rather, a reasonably jury could conclude that, because Plaintiff's cell was searched and he was

---

[10] Defendants' supplemental reply also argues that Plaintiff concedes that they did not assault him, referencing Plaintiff's response to their statement of undisputed facts where he replies "True" to their assertion that they did not use excessive force against him but instead used reasonable force to prevent an attack on Mendoza. (ECF No. 98, p. 5, citing ECF No. 93, p. 6). This was undoubtedly a clerical error by Plaintiff. He has maintained in every filing that these Defendants assaulted him and that he did not attack Mendoza. Importantly, in the very same document cited by Defendants, Plaintiff denied attacking Mendoza, indicates that he was thrown to the ground by them, and claimed to be choked by them. (ECF No. 93, pp. 5-6).

pulled from it and beaten while at least one officer made statements about him filing grievances, the purpose of the search and use of force from all Defendants was to retaliate against Plaintiff for filing grievances.

However, for the same reasons given in connection with Plaintiff's First Amendment mail claim, the Court concludes that Defendants are entitled to summary judgment as to this aspect of the retaliation claim. In short, Plaintiff has no evidence that Defendants Mendoza, Grimsley, and Cornejo were involved with his mail or J-Pay payments. Moreover, Defendants have provided a log showing that Plaintiff routinely received mail.

### 2.  Plaintiff's motion for summary judgment

Plaintiff's motion for summary judgment generally repeats his assertions from the complaint that Defendants retaliated against him. (ECF No. 84, p. 26). For the reasons given above in connection with Defendants' motion for summary judgment, the Court concludes that a material issue of fact remains as to whether Mendoza, Grimsley, and Cornejo retaliated against him as to the search of his cell and use of force incident. However, they are entitled to summary judgment as to Plaintiff's allegation of withheld mail and prison payments.

Thus, the Court recommends denying Plaintiff's motion for summary judgment on the retaliation claims as well.

## IV.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 79) be granted, in part, and denied, in part.

    a.  Defendants be granted summary judgment to the extent that they seek dismissal of (1) Plaintiff's First Amendment access to mail claims against Defendants Mendoza, Grimsley, and Cornejo; and (2) Plaintiff's First Amendment retaliation claims against Defendants Mendoza, Grimsley, and Cornejo, but only as to the allegation that they retaliated against Plaintiff by interfering with his mail and prison payments.

    b.  Defendants be denied summary judgment as to all other claims;

2.  Plaintiff's motion for summary judgment (ECF Nos. 81, 84) be denied in its entirety.

3.  The case proceed on Plaintiff's Eighth Amendment excessive force against Defendants Mendoza, Grimsley, Cornejo, Navarro, Layshot, and Mattingly; First Amendment retaliation against Defendants Navarro and Robert Gonzalez and also against Defendants Mendoza, Grimsley, and Cornejo to the extent that Plaintiff alleges retaliation by these latter three Defendants based on the search of his cell and the use of force against him; Fourteenth Amendment procedural due process against Defendant A. Bracken; Eighth Amendment deliberate indifference to serious medical needs against Defendant Cahapisan; and Eighth Amendment conditions of confinement against Defendant Munoz.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __February 23, 2024__                /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE