1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| SALVADOR VENEGAS, | Case No. 1:21-cv-00962-KES-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT NAVARRO'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| E. MENDOZA, et al., | |
| Defendants. | (ECF No. 111). |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

17      Plaintiff Salvador Venegas ("Plaintiff") is a state inmate proceeding *pro se* and *in forma*

18 *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint

19 commencing this action on June 21, 2021. (ECF No. 1.)

20      Now before the Court is Defendant Navarro's motion for partial summary judgment as

21 to certain claims and parts of claims against him. (ECF No. 111). Specifically, Defendant

22 Navarro's motion seeks the following:

23      Defendant Navarro moves for partial summary judgment with respect to the
        following claims: (1) Navarro's alleged threat in violation of the First

24      Amendment on January 15, 2021, stating, "you better keep your mouth shut"
        and "you want to complain, we'll show you how Wasco treats snitches; (2)

25      Navarro's alleged threat in violation of the First Amendment on January 21,
        2021, stating, "Lieutenant Thomas told us about your complaint [Plaintiff] is

26      snitching on you" and "this isn't over, you want to keep snitching it's going to
        get worse for you, stop fucking snitching, you piece of shit."; (3) Navarro's

27      alleged interference with Plaintiff's mail and monetary payments sent by family
        members; (4) the allegedly retaliatory cell search on January 15, 2021; (5) the

28

1
2

allegedly retaliatory response to the January 15, 2021 incident involving
Plaintiff and Defendants Mendoza and Cornejo; and (6) the allegedly retaliatory
interference with mail and monetary payments.

3   (ECF No. 111, at p. 1-2). [1]

4   For the reasons given, it is recommended that Defendant Navarro's motion for summary

5   judgment be granted to the extent it seeks dismissal of Plaintiff's First Amendment claim based

6   on any actions other than interference with mail based on lack of exhaustion of administrative

7   remedies, and that Defendant Navarro's motion for summary judgment be denied to the extent

8   it seeks dismissal of Plaintiff's First Amendment retaliation and access to mail claims based on

9   Navarro's alleged interference with Plaintiff's mail.

10   **I.     BACKGROUND**

11   **A.  Summary of Plaintiff's Complaint**

12   This case proceeds on Plaintiff's complaint filed on June 21, 2021. (ECF Nos. 1, 12).

13   Plaintiff's complaint asserts six claims against multiple defendants, including the following

14   three claims currently pending against moving Defendant Navarro: excessive force in violation

    of the Eighth Amendment, retaliation in violation of the First Amendment, and access to mail

15   in violation of the First Amendment. (ECF No. 12).

16   Plaintiff's complaint makes the following allegations regarding the claims currently

17   pending against Defendant Navarro. [2]

18   **Excessive Force**

19   On January 15, 2021, several investigative services unit (ISU) officers quickly ran to

20   Plaintiff's cell, B6-245. Defendants Mendoza, Grimsley, and Cornejo directed Plaintiff to exit

21   his cell for a cell search. Plaintiff complied with all orders. Plaintiff was then asked to submit to

22   a pat-down search, to which Plaintiff complied. Without warning or provocation, Plaintiff was

23   thrown from cell 245 to 242, approximately 10-15 feet. After Plaintiff was thrown on the

24   ground, he was repeatedly assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro,

25   while restrained in handcuffs and shackles. When Plaintiff was being attacked while restrained,

26

27   [1] Defendant Navarro does not move for summary judgment with respect to Plaintiff's Eighth
     Amendment excessive force claim.

28   [2] Pursuant to the Court's order (ECF No. 10), Plaintiff later submitted a signed copy of his complaint,
     with his factual statements made under penalty of perjury (ECF No. 12).

he was being choked. Defendants Mendoza and Grimsley shouted "stop resisting" and "you want to write complaints and grievances."

**Retaliation**

On January 15, 2021, Defendants Mendoza, Grimsley, and Cornejo told Plaintiff that his cell was going to be searched due to complaining and submitting grievances. Defendants Mendoza, Grimsley, and Cornejo brutally assaulted Plaintiff while he was restrained on the floor. Defendant Navarro repeatedly threatened Plaintiff, stating "you better keep your mouth shut" and "you want to complain, we'll show you how Wasco treats snitches."

On January 21, 2021, Thomas, a nonparty, informed Defendant Navarro that Plaintiff had submitted a staff complaint alleging excessive use of force and staff misconduct. Defendants Navarro and Robert Gonzalez came to Plaintiff's cell, D6-215, and stated, "Lieutenant Thomas told us about your complaint [Plaintiff] is snitching on you" and "this isn't over, you want to keep snitching it's going to get worse for you, stop fucking snitching, you piece of shit."

Finally, the complaint alleges that Plaintiff has been told his mail would not be given to him due to initiating grievances and lawsuits against Defendants Mendoza, Grimsley, Cornejo, and Navarro. On January 21, 2021, Defendant Navarro told Plaintiff, "you ain't getting mail anymore. You want to file grievances and cry about shit." Prior to being assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, Plaintiff would receive mail regularly through J.Pay.com. Now Plaintiff's mail has been withheld and his family is not allowed to place funds in his trust account. The funds are simply stolen. Defendants Mendoza, Cornejo, Grimsley, and Navarro are members of the investigative services unit and have retaliated against Plaintiff, withholding his mail, due to filing grievances.

**Mail**

Plaintiff has been told that his mail would not be given to him due to initiating grievances and lawsuits against Defendants Mendoza, Grimsley, Cornejo, and Navarro. On January 21, 2021, Defendant Navarro told Plaintiff, "you ain't getting mail anymore. You want to file grievances and cry about shit." Prior to being assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, Plaintiff would receive mail regularly through J.Pay.com.

Now Plaintiff's mail has been withheld and his family is not allowed to place funds in his trust account. The funds are simply stolen. Defendants Mendoza, Cornejo, Grimsley, and Navarro are members of the investigative services unit and have retaliated against Plaintiff, withholding his mail, due to filing grievances.

### B. Screening Order

The Court issued a screening order regarding Plaintiff's complaint on August 13, 2021, finding that Plaintiff stated three constitutional claims against Defendant Navarro (in addition to other claims against other defendants). (ECF No. 10).

The Court found that Plaintiff stated an excessive force claim against Defendant Navarro, among other defendants because:

> Plaintiff alleges that, while complying with an order to submit to a pat-down search, he was thrown approximately ten to fifteen feet. After he was thrown to the ground, and while he was handcuffed and shackled, Plaintiff was repeatedly assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro. Plaintiff was also being choked and exclaimed that he could not breathe. Plaintiff was dragged outside the housing unit and Defendants Layshot and Mattingly slammed Plaintiff on the floor.

(ECF No. 10, at p. 9).

The Court found that Plaintiff stated a First Amendment retaliation claim against Defendant Navarro, because:

> Plaintiff has been told his mail would not be given to him due to initiating grievances and lawsuits against Defendants Mendoza, Grimsley, Cornejo, and Navarro. On January 21, 2021, Defendant Navarro told Plaintiff, "you ain't getting mail anymore. You want to file grievances and cry about shit." Prior to being assaulted by Defendants Mendoza, Grimsley, Cornejo, and Navarro, Plaintiff would receive mail regularly through J.Pay.com. Now Plaintiff's mail has been withheld and his family is not allowed to place funds in his trust account. The funds are simply stolen. Defendants Mendoza, Cornejo, Grimsley, and Navarro are members of the investigative services unit and have retaliated against Plaintiff, withholding his mail, due to filing grievances.

(ECF No. 10, at p. 11).

The Court found that Plaintiff stated a First Amendment access to mail claim because:

> Here, Plaintiff alleges that Defendants Mendoza, Grimsley, Cornejo, and Navarro have withheld Plaintiff's mail. Defendant Navarro told Plaintiff that he would not be receiving any mail on January 21, 2021. Plaintiff's mail has been withheld and his family cannot place funds in his trust account.

1    (ECF No. 10, at p. 25).

2           In response to the Court's screening order, Plaintiff filed a notice that he agreed to

3    proceed on the claims found cognizable by the Court. (ECF No. 11). The District Judge later

4    ordered that the complaint proceed against Defendant Navarro on Plaintiff's Eighth

5    Amendment excessive force claim, Plaintiff's First Amendment retaliation claim, and

6    Plaintiff's First Amendment access to mail claim. (ECF No. 19)

7                   **C.  Defendant Navarro's Motion for Partial Summary Judgment**

8           On November 14, 2024, Defendant Navarro moved for partial summary judgment with

9    respect to portions of Plaintiff's First Amendment retaliation claims against him, as well as

10   Plaintiff's First Amendment mail interference claim, but did not move for summary judgment

11   as to the Eighth Amendment excessive force claim. (ECF No. 111).

12          Regarding Plaintiff's retaliation claim against him, Defendant Navarro's motion makes

     the following arguments:

13          (1)     "While Navarro acknowledges that Plaintiff submitted grievance number
14          85255, which includes allegations that Navarro threatened to withhold mail in
            retaliation for prior grievances submitted, Plaintiff failed to submit a grievance
15          concerning other alleged threats of retaliation made by Navarro which did not
            concern mail." (ECF No. 111-1, at p. 7). "Here, Plaintiff failed to submit a
16          grievance alleging that Navarro retaliated against Plaintiff either on January 15,
            2021, or by stating on January 21, 2021, 'Lieutenant Thomas told us about your
17          complaint [Plaintiff] is snitching on you' and 'this isn't over, you want to keep
            snitching it's going to get worse for you, stop fucking snitching, you piece of
18          shit.' (DUF No. 9.) Submitting grievance number 85255, which concerns
            withholding of mail, would not have placed CDCR on notice of the other alleged
19          statements made by Navarro unrelated to withholding of mail or allow CDCR to
20          address these allegations." (ECF No. 111-1, at p. 8).

21          (2)     "It is undisputed that Navarro is not liable for First Amendment retaliation
            with respect to the January 15, 2021 cell search, his response to the January 15,
22          2021 incident involving Plaintiff, Mendoza, and Cornejo, and alleged
            interference with Plaintiff's mail and confiscation of money. Navarro
23          acknowledges that genuine issues of fact exist concerning the alleged threats
            made on January 15, 2021 and January 21, 2015, and does not request partial
24          summary judgment concerning those claims." (ECF No. 111-1, at p. 9).
            "Navarro was unaware that Plaintiff had submitted any grievances prior to
25          January 15, 2021. (DUF No. 24.) Absent proof that Navarro was aware of the
            grievances previously submitted by Plaintiff, the First Amendment retaliation
26          claim fails." (ECF No. 111-1, at p. 10).

27          (3)     "Even assuming an issue of fact as to whether Navarro had prior

28

                                                  5

knowledge of the grievances submitted by Plaintiff, there is a legitimate correctional purpose to conducting a search of an inmate for gang information." (ECF No. 111-1, at p. 10). "Navarro's conduct in responding to the January 15, 2021 incident furthered a legitimate correctional purpose in maintaining the safety of correctional officers." (ECF No. 111-1, at p. 11).

Regarding the claim for interference with mail in violation of the First Amendment, Defendant Navarro's motion argues: "There is no evidence that Navarro improperly interfered with Plaintiff's mail or stopped money from being sent by his family. (DUF Nos. 12, 13, 14, 15.) Additionally, Navarro, an IGI investigator, lacks access to J-Pay payments made to inmates. (*Id.*)." (ECF No. 111-1, at p. 8).

### D.  Plaintiff Fails to Oppose Defendant Navarro's Motion

Plaintiff has not filed an opposition to Defendant Navarro's motion for partial summary judgment, despite being given a *sua sponte* extension of time to do so. (ECF No. 113).

### E.  Currently Pending Motions for Summary Judgment by Plaintiff and Other Defendants

It is also worth noting, as background, that there are two other pending motions for summary judgment in this case.

On April 28, 2023, Defendants Bracken, Gonzalez, Mendoza, Grimsley, Cornejo, Munoz, and Cahapisan moved for summary judgment.[3] (ECF No. 79). Defendants summarized their arguments for summary judgment as follows:

(1) Defendants are not liable for retaliation in violation of the First Amendment; (2) Defendants are not liable for interfering with Plaintiff's mail in violation of the First Amendment; (3) the excessive force claims against Defendants Mendoza, Grimsley and Cornejo are barred by *Heck v. Humphrey*; (4) Defendant Cahapisan was not deliberately indifferent to a serious medical need; (5) Plaintiff was not denied the right to call witnesses at a disciplinary hearing by Defendant Bracken; (6) Defendant Munoz did not violate the Eighth Amendment; and (7) Defendants Bracken and Munoz are entitled to qualified immunity.

(*Id.*, at p. 1-2).

Plaintiff opposed these Defendants' prior motion for summary judgment. (ECF Nos. 91, 93).

Additionally, on May 17, 2023, Plaintiff filed his own motion for summary judgment

---

[3] The other three Defendants—Mattingly, Layshot, and Navarro—are not included in this motion for summary judgment.

against all defendants. (ECF No. 84). In support of his motion, Plaintiff submitted his own declaration, medical records, grievances, documents relating to issues with his toilet, J-PAY documents, documents relating to his complaints of excessive use of force against him, RVR documents, the declaration from Marcos Ramos, and discovery documents. (ECF No. 81).

On February 26, 2024, the Court issued Findings and Recommendations that Defendants Bracken, Gonzalez, Mendoza, Grimsley, Cornejo, Munoz, and Cahapisan's motion for summary judgment be granted in part and denied in part, and that Plaintiff's motion for summary judgment be denied. (ECF No. 101). In doing so, this Court made certain findings relevant to the current motion brought by Defendant Navarro.

Regarding Plaintiff's retaliation claim, the Court wrote:

> According to the motion for summary judgment filed by Defendants Mendoza, Grimsley, and Cornejo, and their supporting declarations, they did not know about Plaintiff's prior grievances so as to retaliate against him on this basis. (ECF No. 79-1, pp. 14-15; ECF No. 79-2, pp. 93-95, 97-99, 123-125). . . . .

> Viewing this evidence in a light most favorable to Plaintiff, a material issue of fact remains as to whether Defendants retaliated against Plaintiff by searching his cell and allegedly assaulting him. This is so largely for the same reasons given above in connection with permitting Plaintiff's excessive force claim to proceed. Notably, Plaintiff has provided his own declaration stating that at least one officer made statements about him filing grievances during the assault. And he has provided the declaration of his former cellmate who claims to have witnessed the assault and heard statements made about filing grievances. The Court finds it ultimately immaterial that Plaintiff cannot pinpoint which Defendant made the statement. Rather, a reasonably jury could conclude that, because Plaintiff's cell was searched and he was pulled from it and beaten while at least one officer made statements about him filing grievances, the purpose of the search and use of force from all Defendants was to retaliate against Plaintiff for filing grievances.

(ECF No. 101, p. 25-26).

Regarding Plaintiff's access to mail claim, the Court wrote:

> Plaintiff generally repeats his assertions from his complaint but provides no evidence that any Defendant had any involvement with his mail or J-Pay payments. (ECF No. 91, p. 23). Further, the Court notes that, in his deposition, Plaintiff concedes that he does not have any information that Defendants interfered with his mail or payments, but he believed it was the ISU unit because Navarro had made statements that he was going to get his mail, and he presumed that other ISU officers worked in concert with Navarro. (ECF No. 79-2, pp. 42). However, Plaintiff admitted that Navarro never told him that any of the other Defendants were interfering with his mail. (*Id.* at 42-43).

1

2    Upon review of the evidence, the Court recommends granting summary
     judgment on this claim. In short, Defendants have come forth with evidence that
3    they never interfered with Plaintiff's mail or payments. In response, Plaintiff
     does not offer any conflicting evidence; rather, his claim is premised on his
4    assumption that these Defendants must have interfered with his mail in concert
     with Navarro even though Navarro never implicated any of them.
5

6  (ECF No. 101, p. 23).

7        Defendants filed objections to those Findings and Recommendations on March 27, 2024

8  (ECF No. 105). The Court's Findings and Recommendations regarding Defendant Bracken,

9  Gonzalez, Mendoza, Grimsley, Cornejo, Munoz, and Cahapisan's motion for summary

10 judgment are currently pending before the District Judge.

11       **II.    LEGAL STANDARDS FOR SUMMARY JUDGMENT**

12       Summary judgment in favor of a party is appropriate when there "is no genuine dispute

13 as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

14 P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine

15 dispute about material facts, summary judgment will not be granted."). A party asserting that a

16 fact cannot be disputed must support the assertion by "citing to particular parts of materials in

17 the record, including depositions, documents, electronically stored information, affidavits or

18 declarations, stipulations (including those made for purposes of the motion only), admissions,

19 interrogatory answers, or other materials, or showing that the materials cited do not establish

20 the absence or presence of a genuine dispute, or that an adverse party cannot produce

21 admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

22       A party moving for summary judgment "bears the initial responsibility of informing the

23 district court of the basis for its motion, and identifying those portions of 'the pleadings,

24 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

25 any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex

26 Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-

27 moving party bears the burden of proof at trial, the moving party need only prove that there is

28 an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*,

   627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the

non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## III.    DISCUSSION

### A.  Exhaustion of Administrative Remedies – Retaliatory Threats

The Court first addresses Defendant Navarro's argument that Plaintiff failed to submit any grievance regarding any alleged retaliation by Defendant Navarro unrelated to interference with mail. Again, Defendant Navarro concedes that "Plaintiff submitted grievance number 85255, which includes allegations that Navarro threatened to withhold mail in retaliation for prior grievances submitted." (ECF No. 111-1, at p. 7).

### 1.  Legal Standards regarding Exhaustion

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that

1    "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

2    other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

3    such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

4         Prisoners are required to exhaust the available administrative remedies prior to filing

5    suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201

6    (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to

7    prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the

8    relief sought by the prisoner and regardless of the relief offered by the process, unless "the

9    relevant administrative procedure lacks authority to provide any relief or to take any action

10   whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross

11   v. Blake*, 578 U.S. 632, 643 (2016).

12        "Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong

13   for which redress is sought. The grievance need not include legal terminology or legal theories,

14   because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its

15   resolution, not to lay groundwork for litigation. The grievance process is only required to alert

16   prison officials to a problem, not to provide personal notice to a particular official that he may

17   be sued." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (alteration in original) (citations

18   and internal quotation marks omitted).

19        "[F]ailure to exhaust is an affirmative defense under the PLRA" that a defendant must

20   plead and prove. *Jones*, 549 U.S. at 216. The Ninth Circuit, in *Albino v. Baca,* 747 F.3d 1162,

21   1168 (9th Cir. 2014), held that the appropriate framework for determining failure to exhaust is

22   a motion for summary judgment. To succeed on a motion for summary judgment based on

23   failure to exhaust, "the defendant's burden is to prove that there was an available administrative

24   remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172 (citation

25   omitted). If the defendants have met their burden, "the prisoner has the burden of production"

26   and must "come forward with evidence showing that there is something in his particular case

27   that made the existing and generally available administrative remedies effectively unavailable

28   to him." *Id*. "[T]he ultimate burden of proof remains with the defendant." *Id*.

\\\

### 2.  Evidence submitted by Defendant Navarro regarding Exhaustion

In support of his motion, Defendant Navarro filed a declaration by F. Marquez, who is employed by the California Department of Corrections and Rehabilitations as the Grievance Coordinator at Wasco State Prison. (ECF 111-1, at p. 11). Marquez describes the grievance process at Plaintiff's institution of confinement at the relevant time, as follows: "At all times during his incarceration, CDCR and WSP had an administrative grievance and appeal process in place for inmates. Since January 1, 2022, offenders are required to follow the procedures set forth in Title 15, sections 3480-34,35." (*Id.* at p. 12).

> The grievance process has two levels of review. The new process requires the inmate to submit a grievance in writing to the Institutional Office of Grievances (OOG) at the prison, re-entry facility, or fire camp w[h]ere they are housed within 60-days of discovering the alleged incident. Cal, Code Regs. tit. 15, § 3484(b)(l). The inmate shall submit the grievance on a form 602-1, or complete the form electronically, if available. Cal. Code Regs. tit. 15, § 34.82(c)(1). If the inmate wishes to appeal the OOG decision, they may do so in writing on a form 602-2 to the Office of Appeals (OOA) within 60-days. Cal. Code Regs. tit. 15, § 3484(a)-(c).

(*Id.*).  "Completion of the review process by the OOA constitutes exhaustion of all administrative remedies available to a claimant. Cal. Code Regs., tit. 15, § 3486(1)(1). A" (*Id.*, at p. 13).

Marquez also attached exhibits of Plaintiff's grievances filed on or after June 1, 2020. (*Id.* at p. 13).

Defendant Navarro also filed a declaration by Howard E. Moseley, who is employed by the California Department of Corrections and Rehabilitation as the Associate Director of the Office of Appeals. (*Id.* at p. 73). Moseley declares that he is "familiar with the record keeping system at the OOA which is maintained in the course of the regularly conducted activities of the OOA; making and maintaining the records is a regular practice of those activities." (*Id.*, at p. 75). Moseley conducted a search for all appeals received from Plaintiff between January 21, 2021 and June 21, 2021, and found five relevant appeals, but states that "None of the appeals identified . . . contained an allegation that Defendant Navarro retaliated against Plaintiff on January 21, 2021, while Plaintiff was housed at Wasco State Prison." (*Id.*, at pp. 75-76).

\\\

### 3.  Analysis of Defendant Navarro's Exhaustion Argument

The Court finds that Defendant Navarro has submitted sufficient evidence to prove that there was an available administrative remedy, and that Plaintiff did not exhaust that available remedy. Defendant Navarro has submitted two declarations of persons with knowledge of the grievance process and the grievances submitted by Plaintiff at the relevant time. Those declarations and related exhibits demonstrate that Plaintiff's institution had an available administrative remedy. Moreover, although Plaintiff submitted a grievance related to other related issues, including excessive force and interference with mail, that evidence indicates that Plaintiff failed to submit a grievance claiming that Defendant Navarro retaliated against Plaintiff in ways unrelated to mail, including by using excessive force against Plaintiff or searching Plaintiff's cell.

Plaintiff has not submitted any opposition to Defendant's motion. While the Court has not engaged in its own independent review of all of Plaintiff's grievances, and notes that many are difficult to decipher, it has confirmed that the grievance identified by Defendant as concerning potential retaliation by Defendant Navarro only concerned interference with mail. Specifically, Grievance 85255 is a grievance submitted by Plaintiff on February 1, 2021. (ECF No. 111-2, at p. 46). Plaintiff identifies the subject as "Mail/Retaliation," and his explanation of the issue as "My mail has been impeded and withheld from me due to submitting grievances and challenging customs and practices of WSP staff. My mail is being withheld by ISU personnel." (ECF No. 111-2, at p 46).[4]

The Court thus recommends granting Defendant Navarro's partial motion for summary judgment to the extent it seeks partial summary judgment as to the portion of Plaintiff's First Amendment retaliation claim unrelated to interference with mail based on non-exhaustion of administrative remedies, including Plaintiff's claim that Defendant Navarro engaged in retaliation in connection with the cell search and use of force on January 15, 2021, and alleged

---

[4] It is worth noting that the previous motion for summary judgment filed by Defendants Bracken, Cahapisan, Cornejo, Robert Gonzalez, Grimsley, E. Mendoza, Munoz (ECF No. 79) did not address the issue of exhaustion.

1  threats made on January 15, 2021.[5]

2        Moreover, because the Court is recommending that Defendant Navarro's partial motion

3  for summary judgment as to Plaintiff's retaliation claims—to the extent unrelated to

4  interference with the mail—the Court declines to address Defendant Navarro's alternative

5  arguments for dismissing this portion of Plaintiff's retaliation claim. Specifically, Defendant

6  Navarro's motion for summary judgment also raises the following bases for partially

7  dismissing Plaintiff's retaliation claim: (1) Plaintiff lacks evidence that the January 15, 2021

8  cell search and alleged assault was done in retaliation for Plaintiff filing grievances, (ECF No.

9  111-1, at p. 10); (2) Defendant Navarro was unaware that Plaintiff had submitted grievances

10  prior to January 15, 2021 (*id.*); (3) there was a legitimate correctional purpose for the January

11  15, 2021 cell search (*id.*); and (4) there was a legitimate correctional purpose for the January

12  15, 2021 use of force against Plaintiff (*id.* at p. 11). However, as these all concern the same

13  portion of Plaintiff's retaliation claim that the Court has found subject to dismissal for non-

    exhaustion, the Court declines to address these arguments.

14                 **B. First Amendment - Access to Mail**

15        Defendant Navarro also moves to dismiss Plaintiff's two claims related to interference

16  with mail, *i.e.*, Plaintiff's First Amendment retaliation claim and Plaintiff's First Amendment

17  access to mail claim, both based on the allegation that Navarro interfered with Plaintiff's mail

18  in retaliation for Plaintiff's filing of grievances.

19        Defendant Navarro argues that there is no evidence that Navarro improperly interfered

20  with Plaintiff's mail or stopped money from being send by his family. Additionally, Navarro,

21  an IGI investigator, lacks access to J-Pay payments made to inmates. (ECF No. 111-1, at p. 8).

22           **1. Defendant Navarro's Evidence Regarding Mail Claims**

23        In support of this argument, Defendant Navarro submitted the following portions of

24  Plaintiff's deposition:

25      Q. Did any inmates tell you that they observed Navarro actually interfering with
        your mail?

26

27    [5] However, nothing in this recommendation would preclude Plaintiff from admitting evidence of
    Defendant Navarro's threatening statements to the extent they are relevant to Plaintiff's claim that

28  Defendant Navarro engaged in retaliation by interfering with Plaintiff's mail.

A. No, it would be impossible because the IC unit is not on our facility. It's centralized in the administrative building. So it would be impossible for any inmates to actually witness this action.

(ECF No. 111-2, at 177).  Plaintiff also testified:

Q. So other than what you've received an explanation for as to why the mail had been confiscated, receiving money?

A. Yes.

Q. And what did they do to keep you from receiving money?

A. It's my understanding because of their prestigious job title, they were able to just call somebody in their facility or JPay and tell them, "Do not allow any money to be placed in this inmate's account."

Q. All right. So did they actually, to your knowledge, take the money for themselves or did they just prevent you from receiving it?

A. l honestly do not know. l can't – I don't know what could have happened because of my circumstances.

(*Id.* at p. 179-80).

Defendant Navarro also submitted his own declaration, that stated in relevant part:

In 2021, IGI investigators were not involved in reviewing or opening inmate mail; rather, this was done, if at all, by officers in the Investigative Services Unit. I was not involved in reviewing or opening Venegas' mail, and did not intercept, take or confiscate any mail sent to Venegas, including mail sent by J-Pay, and did not instruct anyone to do so. It is my understanding that if J-Pay mail sent to an inmate was confiscated, it would be noted on a log.

I did not intercept, take or confiscate any money sent to Venegas by J-Pay, or instruct anyone to do so. I do not know how to accomplish this and it is my understanding that IGI officers do not have access to J-Pay payments made to inmates.

(ECF No. 111-2, at p. 185-186).

### 2.  Plaintiff's Evidence Regarding Mail Claims

Plaintiff did not file an opposition to Defendant Navarro's motion for summary judgment. However, Plaintiff's deposition, submitted by Defendant Navarro in connection with his motion for summary judgment, contains the following statements by Plaintiff on this issue, shortly before the portions of Plaintiff's testimony referenced in Defendant Navarro's motion:

Q. So what -- what information do you have that would indicate that Officer Mendoza interfered with your mail?

A. I don't know if it was officer Mendoza per se, but I believe it was his unit because Officer Mendoza is part of the prestigious investigative services unit

which involved him, Cornejo, Grimsley, Navarro and Gonzalez and Lopez. And I believe they worked in concert to deny my mail because all my mail went to them for presumed investigative purposes. And Officer Navarro came to my cell and expressly stated to me and other individuals that I was a snitch, that I wasn't going to get my mail because they were responsible for reporting my mail. So I just kept filing 602 grievances forms addressing it. Because they made it clear that they were going to stop my mail and my wife sent me copies of JPay letters telling that she had, in fact, sent me mail, but I wasn't receiving it.

. . .

Q. And did anyone tell you that Mendoza was interfering with your mail?

A. Yes, Defendant Navarro did. He said because I hit -- Defendant Navarro expressly stated that because I hit Defendant Mendoza, I would not be getting any mail.

. . .

Q. All right. And then with respect to Navarro, other than his statement, do you have any information that he actually went ahead and interfered with it?

A. Any other information would be from other inmates that witnessed Inmate Navarro -- I mean, Defendant Navarro tell them.

Q. Anything.

A. Excuse me?

Q. Yeah, anything that you have. What information --

A. My cellmate Ramos was present. Other inmates had overheard Defendant Navarro. And that was it.  That's all the information that I have.

Q. Okay. And when you say that the other inmates overheard, does that mean that they overheard that because you assaulted an officer, you weren't going to get your mail?

A. Yes. Exactly.

(ECF No. 111-2, at p. 175-177).

### 3.  Analysis of Mail Claims

Although Defendant has presented evidence in support of its defense that Defendant Navarro did not interfere with Plaintiff's mail, there is also evidence in the record that Defendant Navarro told Plaintiff directly that Plaintiff would not be getting mail, which is sufficient to raise a genuine issue of material fact as to whether Defendant Navarro interfered with Plaintiff's access to mail.  Based on the evidence presented, the Court finds there is a genuine issue of material fact regarding whether Defendant Navarro interfered with Plaintiff's mail, and thus recommends denying Defendant Navarro's partial motion for summary

judgment on this basis.

## IV.    CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1.    Defendant Navarro's partial motion for summary judgment (ECF No. 111) be granted, in part, and denied, in part. Specifically:

      a.    Defendant Navarro be granted summary judgment on Plaintiff's First Amendment retaliation claim against him to the extent it is based on actions other than interference with mail.

      b.    Defendant Navarro be denied summary judgment as to Plaintiff's First Amendment retaliation and access to mail claims to the extent they concern Defendant Navarro's alleged interference with Plaintiff's mail.

2.    Plaintiff be permitted to proceed only on the following claims against Defendant Navarro: excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment based on solely on alleged interference with mail, and interference with mail in violation of the First Amendment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __August 6, 2025__                    /s/ _Erica P. Grosjean_

                                                 UNITED STATES MAGISTRATE JUDGE